## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSLYVANIA

ANTHONY HILE,

                        Plaintiff,

            vs.

NATIONAL OILWELL VARCO, L.P.
t/d/b/a NOV LP., NATIONAL OILWELL,
INC. t/d/b/a NOV INC.., NATIONAL
OILWELL VARCO HOLDINGS LLC,
OMRON ELECTRONICS, INC., OMRON
ELECTRONICS LLC, OMRON IDM
CONTROLS, INC., SCHLUMBERGER
NV t/d/b/a SLB, as a successor in interest
of OMRON OILFIELD AND MARINE,
INC., OMRON ELECTRONIC
COMPONENTS LLC, OMRON
SYSTEMS LLC, OMRON SYSTEMS OF
AMERICA, INC., OMRON
MANUFACTURING OF AMERICA,
INC., OMRON MANAGEMENT
CENTER OF AMERICA, INC., OMRON
LOGISTICS OF AMERICA LLC,
OMRON LOGISTICS OF AMERICA,
INC., NABORS DRILLING
TECHNOLOGIES, INC., NABORS
DRILLING TECHNOLOGIES USA,
INC., NABORS DRILLING
EQUIPMENT LEASING, LLC, NABORS
INDUSTRIES, INC., NABORS
DRILLING USA, and NABORS
EQUIPMENT, INC.,

                        Defendants.

CIVIL DIVISION

Docket No.: 3:23-256

Code No.:


**COMPLAINT IN CIVIL ACTION**


Filed on behalf of Plaintiff:

Anthony Hile

Counsel of Record for this Party:

Chad P. Shannon, Esquire
PA I.D. No.: 91212
*cshannon@fridaylaw.com*

Ian M. Watt, Esquire
PA I.D. No.: 324364
*iwatt@fridaylaw.com*


Friday & Cox LLC
1405 McFarland Road
Pittsburgh, PA  15216

Tele # Phone: (412) 561-4290
Fax # Fax: (412) 561-4291


**JURY TRIAL DEMANDED**

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSLYVANIA**

ANTHONY HILE,                                          CIVIL DIVISION

                          Plaintiff,

                                         Docket No.:

     vs.

                                         Code No.:

NATIONAL OILWELL VARCO, L.P.
t/d/b/a NOV LP., et. al.

                        Defendants.

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Anthony Hile, by and through his attorneys, Chad P. Shannon, Esquire, Ian M. Watt, Esquire and Friday & Cox LLC, complains and alleges as follows:

**JURISDICTION AND VENUE**

1.      Plaintiff brings this action against defendants under 28 U.S.C §1332 and contends that diversity jurisdiction exists between the parties and the amount in controversy exceeds $75,000.00.

2.      Personal jurisdiction exists generally over the Defendants as they have sufficient minimum contacts with the forum as a result of business conducted within the Commonwealth of Pennsylvania and within the Western District of Pennsylvania. Personal jurisdiction also exists specifically because Defendants, either directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets products or services within Commonwealth of Pennsylvania, and more particularly, within the Western District, that are the subject of this complaint, as described more particularly below.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). Plaintiff believes and based thereon, alleges, that the Defendants provide goods or services, including those at-issue in this action, and regularly conducts business in this judicial district and by virtue of its conduct within the meaning of 42 Pa.C.S.A. §§ 5301(a) and 5322(b). Upon information and belief, the Defendant therefore resides in this judicial district within the meaning of 28 U.S.C. § 1391(c)(2).

## PARTIES

4.      Plaintiff, Anthony Hile is an individual residing at Curwensville, Grampian Highway, Grampian, Pennsylvania 16838.

5.      Defendant, National Oilwell, Inc. t/d/b/a NOV Inc., is a Delaware corporation with a registered office address of 10353 Richmond Avenue, Houston, Texas 77036.

6.      Defendant, National Oilwell Varco, L.P. t/d/b/a NOV LP, is a Delaware corporation with a registered office address of 10353 Richmond Avenue, Houston, Texas 77036.

7.      Defendant, National Oilwell Varco Holdings LLC, is a Delaware limited liability corporation with a registered agent address of Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

8.      Hereinafter, Defendants National Oilwell, Inc., National Oilwell Varco, L.P., and National Oilwell Varco Holdings LLC shall be collectively referred to as "NOV Defendants."

9.      Defendant, Omron Electronics, Inc., is a Delaware corporation with a registered agent, CT Corporation System with an address of 1635 Market Street Philadelphia, Pennsylvania 19103.

10.      Defendant, Omron Electronics, LLC, is a Delaware limited liability corporation

with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

11.     Defendant, Omron IDM Controls, Inc., is a Delaware corporation with a registered agent, CT Corporation System with an address of 1635 Market Street Philadelphia, Pennsylvania 19103.

12.     Defendant, Schlumberger NV t/d/b/a SLB, as a successor in interest of Omron Oilfield and Marine, Inc, is a Pennsylvania corporation with a principal business address of 1325 S. Dairy Ashford, Houston, Texas, 77077.

13.     Defendant, Omron Electronic Components LLC, is a Delaware limited liability corporation with principal business address of 2895 Greenspoint Parkway, Suite 300, Hoffman Estates, Illinois 60169.

14.     Defendant, Omron Systems, LLC, is a Delaware limited liability corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

15.     Defendant, Omron Systems of America, Inc., is a Delaware corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

16.     Defendant, Omron Manufacturing of America, Inc., is a Delaware corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

17.     Defendant, Omron Management Center of America, Inc., is a Delaware corporation with principal business address of 2895 Greenspoint Parkway, Suite 300, Hoffman Estates, Illinois 60169.

18.     Defendant, Omron Logistics of America, LLC, is a Delaware limited liability corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

19.     Defendant, Omron Logistics of America, Inc., is a Delaware corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

20.     Hereinafter, Defendants Omron Electronics, Inc., Omron Electronics LLC, Omron IDM Controls, Inc., Schlumberger Nv T/D/B/A SLB, As A Successor In Interest Of Omron Oilfield And Marine, Inc., Omron Electronic Components LLC, Omron Systems LLC, Omron Systems Of America, Inc., Omron Manufacturing Of America, Inc., Omron Management Center Of America, Inc., Omron Logistics Of America LLC, and Omron Logistics Of America, Inc. shall be collectively referred to as "Omron Defendants."

21.     Defendant, Nabors Drilling Technologies, Inc., is a Delaware corporation with a registered agent, Prentice-Hall Corporation System, Inc., with an address of 215 Little Falls Drive, Wilmington, Delaware 19808.

22.     Defendant, Nabors Drilling Technologies USA, Inc., is a Delaware corporation with a registered agent, CT Corporation System, with an address of 1999 Bryan St., Suite 900, Dallas, Texas 75201.

23.     Defendant, Nabors Drilling Equipment Leasing, LLC, is a Delaware limited liability corporation with a registered agent, The Corporation Trust Company with an address of 1209 Orange Street, Wilmington, Delaware 19801.

24.     Defendant, Nabors Industries, Inc., is a Delaware corporation with principal business address of 515 W Greens Road Suite 1200 Houston, Texas 77067.

25.     Defendant, Nabors Drilling USA, is a Delaware corporation with principal business address of 515 W Greens Road Suite 1000 Houston, Texas 77067.

26.     Defendant, Nabors Equipment Inc., is a Delaware corporation with principal business address of 515 W Greens Road Suite 1200 Houston, Texas 77067.

27.     Defendant, Canrig Drilling Technology, LTD, is a Delaware limited liability corporation with principal business address of 515 W Greens Road Suite1200 Houston, Texas 77067.

28.     Hereinafter, Defendants Nabors Drilling Technologies, Inc., Nabors Drilling Technologies USA, Inc., Nabors Drilling Equipment Leasing, LLC, Nabors Industries, Inc., Nabors Drilling USA, Nabors Equipment Inc. and Canrig Drilling Technology, LTD shall be collectively referred to as "Nabors Defendants."

29.     At all relevant times, NOV Defendants designed, manufactured, inspected, tested, sold, marketed and supplied the at-issue top drive system to aid in the extraction of natural gas which was used by the Plaintiff's employer in their drilling operations.

30.     At all relevant times, Nabors Defendants designed, manufactured, inspected, tested, sold, marketed and supplied the at-issue top drive system to aid in the extraction of natural gas which was used by the Plaintiff's employer in their drilling operations.

31.     At all relevant times, Omron Defendants designed, manufactured, inspected, tested, sold, marketed and supplied the electrical and automation components of the at-issue top drive system, including the control console, to aid in the extraction of natural gas which was used by the Plaintiff's employer in their drilling operations.

32.     At all relevant times, all Defendants were acting by and through their authorized

agents, ostensible agents, employees, workers, servants, contractors and subcontractors.

## FACTUAL BACKGROUND

33.     On October 21, 2021, and at all relevant times, Plaintiff was employed as a Derrickhand by Patterson-UTI Drilling Company LLC and was working at a well-site located on Shepard Hill Road, in Jacobsburg, Ohio at Rig 296.

34.     Rig 296 had been equipped to operate with a top drive which was designed, manufactured, inspected, tested, sold, marketed and supplied by Nabors and/or NOV Defendants and which featured a remote control operated Internal Blowout Preventer ("IBOP") positioned to the lower portion of the top drive.

35.     This remote operation system, and related control console, was designed, manufactured, inspected, tested, sold, marketed and supplied by Omron Defendants.

36.     Following an operation in which the drill pipe was perforated and drilling mud had been pumped through the perforations, the Driller at the rig attempted to open the lower IBOP valve remotely using the Driller's console as per typical operating procedure in order to release pressure within the drill pipe which had built up from the pumping down of drilling mud.

37.     At this time, the Driller's console displayed a green light indicating that the lower IBOP valve had opened.

38.     Plaintiff was then instructed by the Driller to manually open an additional bleed off valve to further release any trapped drilling fluid pressure within the drill pipe.

39.     Operating under the impression that both valves had been properly released, the Driller instructed Plaintiff, along with another employee, to begin to break the connection between the crossover sub and the drill pipe and to hold a reservoir to catch any residual drilling mud from the pipe as the disconnection occurred.

40.     As the Driller began to spin the pipe out of the connection, a massive release of pressurized drilling mud occurred from the resulting gap between the crossover sub and the drill pipe.

41.     This release caused Plaintiff, who had been standing adjacent to the drill pipe, to be push backwards causing him to fall and strike his face onto piece of equipment nearby.

42.     As a direct and proximate result of the negligence, carelessness and recklessness of defendants, Plaintiff sustained the following serious injuries, some or all of which may be permanent:

    a.  LeFort Type I Fracture;

    b.  Maxillary fracture;

    c.  Nasal bone fracture;

    d.  Pterygoid plate fracture;

    e.  Closed fracture of hard palate;

    f.  Lip laceration;

    g.  Multiple teeth fractures;

    h.  Loss of teeth;

    i.  Acute respiratory failure;

    j.  Bilateral pulmonary contusion;

    k.  Bruises, contusions and other injuries in or about nerves, muscles, bones, tendons, ligaments, tissues and vessels of the body;

    l.  Nervousness, emotional tension, anxiety and depression; and

    m. Other injuries to be proven at trial.

43.     As a direct and proximate result of the negligence, carelessness and recklessness of

defendants, Plaintiff sustained the following damages, some or all of which may be continuing:

    a. He has endured great pain, suffering, inconvenience, embarrassment, mental anguish, and emotional and psychological trauma;

    b. He has been and will be required to expend large sums of money for medical treatment and care, hospitalization, medical supplies, surgical appliances, rehabilitation and therapeutic treatment, medicines, and other attendant services;

    c. His general health, strength and vitality have been impaired;

    d. Permanent scarring resulting from his injuries;

    e. Serious disfigurement resulting from his lower left leg and foot amputation which has caused permanent loss and/or significant impairment of the function of his legs;

    f. He has sustained and- will- continue to sustain lost earnings and his earning capacity has been and may be permanently impaired; and

    g. He has been and will in the future be unable to enjoy various pleasures of life that he previously enjoyed.

**COUNT I**
*Plaintiff Anthony Hile vs. NOV Defendants*
**Negligence**

44.    All preceding paragraphs are incorporated herein by reference.

45.    NOV Defendants, as the designers and manufacturers of the top drive, had a duty to discover and repair any defects in the top drive and its component parts that were known, or discoverable in the exercise of ordinary care.

46.    Plaintiff's injuries and damages were a direct and proximate result of NOV Defendants' negligence, carelessness and recklessness in the following particulars:

    a. In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the top drive;

    b. In blatantly failing to use due care in manufacturing, designing, marketing and

selling a defective product;

c.  In failing to inspect the top drive for any reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the top drive;

d.  In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to the top drive;

e.  In failing to ensure that the top drive console could reliably indicated if the IBOP valve was open or closed;

f.  In failing to ensure IBOP valve of the top drive functioned correctly;

g.  In negligently replacing or repairing the connecting device or any parts, systems, devices, or mechanisms relating to the top drive;

h.  In failing to properly employ the instructions, manuals, or proper techniques necessary when installing, replacing, repairing, and/or servicing the top drive;

i.  In failing to replace or repair worn out parts, systems, devices, or mechanisms relating to the top drive;

j.  In failing provide and display adequate warnings or instructions with respect to the intended use of the top drive;

k.  In failing to provide and display adequate warning that the IBOP valve of the top drive may not release properly in high pressure drilling operations;

l.  In failing to notify, warn, or make known to the purchaser and ultimate user of the top drive that there were defective and/or worn out parts, devices, systems or mechanisms of the top drive, including the IBOP valve; and

m. In allowing to be put into the stream of commerce a top drive which it knew or should have known was defective, hazardous, or unnecessarily dangerous.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against

Defendant NOV Inc. in an amount in excess of $75,000, together with court costs, interest

and all other and further relief permitted by the Court.

## COUNT II
*Plaintiff Anthony Hile vs. NOV Defendants*
### Strict Products Liability

47.     All preceding paragraphs are incorporated herein by reference.

48.     NOV Defendants. designed, manufactured, inspected, tested, sold, marketed and supplied the at-issue top drive and/or respective parts including the IBOP valve and control console.

49.     At all relevant times, NOV Defendants represented to Plaintiff's employer, Plaintiff, and the public in general that the at-issue top drive as assembled, was free from defects, and generally suitable for the purposes for which it was intended.

50.     Contrary to NOV Defendants' representations, the pump as assembled, at the time it left NOV Defendants' control, was in a defective, hazardous, unsafe and dangerous condition, unfit for its intended use, and unreasonably dangerous to Plaintiff and other users, both at the time it left control of Defendants and on the day of the incident, generally, and based on the following particulars:

      a.  The top drive as assembled was designed and manufactured in such a manner that it produced pressure at hazardous, unsafe and dangerous levels;

      b.  Defendants failed to use a safer design when there were feasible alternatives at the time of the top drive's manufacture;

      c.  The top drive as assembled was designed and manufactured in such a manner that it failed to release the IBOP valve when operated remotely;·

      d.  The top drive as assembled was designed and manufactured in such a manner that it did not have a means to indicate if the IBOP valve had failed to properly open;

      e.  The top drive as assembled was designed and manufactured in such a manner that it did not have a means to indicate the position of the at-issue IBOP valve;

      f.  The top drive as assembled, failed to contain adequate warnings or instructions

with respect to IBOP;

g.  The top drive as assembled did not contain a pressure gauge at the IBOP valve at-issue;

h.  In the top drive being designed and manufactured in such a manner that the IBOP valve did not open properly when control by the top drive console;

i.  In the top drive being designed and manufactured in such a manner that the top drive console indicated that the IBOP was open when it was not;

j.  The top drive as assembled was designed and manufactured in such a manner that it could not operate safely for its foreseeable intended use; and

k.  The remote-control system and control console were designed and manufactured in such a manner that it could not operate properly to open the at-issue IBOP valve.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against NOV Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

**COUNT III**
*Plaintiff vs. NOV Defendants*
**Breach of Warranty**

58.    All preceding paragraphs are incorporated herein by reference.

59.    At the time the top drive was sold, NOV Defendants in the business of selling and marketing similar connecting devices and was a merchant of such.

60.    In connection with the sale of the top drive, NOV Defendants provided the purchaser and subsequent purchasers and users an implied warranty of merchantability and maintained that the connecting device was fit for the ordinary purposes for which it was used.

61.    Additionally, Plaintiff relied on the representations made by NOV Defendants that the top drive would be fit and suitable for this particular purpose.

62.     The top drive supplied by NOV Defendants was dangerous and defective at the time it left NOV Defendants' control, and was unfit for the ordinary purposes for which it was to be used.

63.     Due to the nature of the defect as alleged herein, Plaintiff was unable to discover the nature of this defect until the time of the herein incident.

64.     The injuries suffered by Plaintiff and the resultant damages were caused by a breach of the implied warranties of merchantability and fitness for a particular purpose extended to the purchasers and users by NOV Defendants.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against NOV Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

## COUNT IV
*Plaintiff Anthony Hile vs. Nabors Defendants*
### Negligence

65.     All preceding paragraphs are incorporated herein by reference.

66.     Nabors Defendants, as the designers and manufacturers of the top drive, had a duty to discover and repair any defects in the top drive and its component parts that were known, or discoverable in the exercise of ordinary care.

67.     Plaintiff's injuries and damages were a direct and proximate result of Nabors Defendants' negligence, carelessness and recklessness in the following particulars:

    a.   In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the top drive;

    b.   In blatantly failing to use due care in manufacturing, designing, marketing and selling a defective product;

c.  In failing to inspect the top drive for any reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the top drive;

d.  In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to the top drive;

e.  In failing to ensure that the top drive console could reliably indicated if the IBOP valve was open or closed;

f.  In failing to ensure IBOP valve of the top drive functioned correctly;

g.  In negligently replacing or repairing the connecting device or any parts, systems, devices, or mechanisms relating to the top drive;

h.  In failing to properly employ the instructions, manuals, or proper techniques necessary when installing, replacing, repairing, and/or servicing the top drive;

i.  In failing to replace or repair worn out parts, systems, devices, or mechanisms relating to the top drive;

j.  In failing provide and display adequate warnings or instructions with respect to the intended use of the top drive;

k.  In failing to provide and display adequate warning that the IBOP valve of the top drive may not release properly in high pressure drilling operations;

l.  In failing to notify, warn, or make known to the purchaser and ultimate user of the top drive that there were defective and/or worn out parts, devices, systems or mechanisms of the top drive, including the IBOP valve; and

m.  In allowing to be put into the stream of commerce a top drive which it knew or should have known was defective, hazardous, or unnecessarily dangerous.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Nabors Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

**COUNT V**
*Plaintiff Anthony Hile vs. Nabors Defendants*
**Strict Products Liability**

68.    All preceding paragraphs are incorporated herein by reference.

69.    Nabors Defendants designed, manufactured, inspected, tested, sold, marketed and supplied the at-issue top drive and/or respective parts including the IBOP valve and control console.

70.    At all relevant times, Nabors Defendants represented to Plaintiff's employer, Plaintiff, and the public in general that the at-issue top drive as assembled, was free from defects, and generally suitable for the purposes for which it was intended.

71.    Contrary to Nabors Defendants' representations, the pump as assembled, at the time it left Nabors Defendants' control, was in a defective, hazardous, unsafe and dangerous condition, unfit for its intended use, and unreasonably dangerous to Plaintiff and other users, both at the time it left control of Defendants and on the day of the incident, generally, and based on the following particulars:

    a.    The top drive as assembled was designed and manufactured in such a manner that it produced pressure at hazardous, unsafe and dangerous levels;

    b.    The top drive as assembled was designed and manufactured in such a manner that it failed to release the IBOP valve when operated remotely;·

    c.    The top drive as assembled was designed and manufactured in such a manner that it did not have a means to indicate if the IBOP valve had failed to properly open;

    d.    Defendants failed to use a safer design when there were feasible alternatives at the time of the top drive's manufacture;

    e.    The top drive as assembled was designed and manufactured in such a manner that it did not have a means to indicate the position of the at-issue IBOP valve;

    f.    The top drive as assembled, failed to contain adequate warnings or instructions

with respect to IBOP;

g.  The top drive as assembled did not contain a pressure gauge at the IBOP valve at-issue;

h.  In the top drive being designed and manufactured in such a manner that the IBOP valve did not open properly when control by the top drive console;

i.  In the top drive being designed and manufactured in such a manner that the top drive console indicated that the IBOP was open when it was not;

j.  The top drive as assembled was designed and manufactured in such a manner that it could not operate safely for its foreseeable intended use; and

k.  The remote-control system and control console were designed and manufactured in such a manner that it could not operate properly to open the at-issue IBOP valve.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Nabors Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

### COUNT VI
*Plaintiff vs. Nabors Defendants*
### Breach of Warranty

72.  All preceding paragraphs are incorporated herein by reference.

73.  At the time the top drive was sold, Nabors Defendants were in the business of selling and marketing similar connecting devices and was a merchant of such.

74.  In connection with the sale of the top drive, Nabors Defendants provided the purchaser and subsequent purchasers and users an implied warranty of merchantability and maintained that the connecting device was fit for the ordinary purposes for which it was used.

75.  Additionally, Plaintiff relied on the representations made by Nabors Defendants that the top drive would be fit and suitable for this particular purpose.

76.     The top drive supplied by Nabors Defendants was dangerous and defective at the time it left Nabors Defendants' control, and was unfit for the ordinary purposes for which it was to be used.

77.     Due to the nature of the defect as alleged herein, Plaintiff was unable to discover the nature of this defect until the time of the herein incident.

78.     The injuries suffered by Plaintiff and the resultant damages were caused by a breach of the implied warranties of merchantability and fitness for a particular purpose extended to the purchasers and users by Nabors Defendants.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Nabors Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

### COUNT VII
*Plaintiff Anthony Hile vs. Omron Defendants*
**Negligence**

79.     All preceding paragraphs are incorporated herein by reference.

80.     Omron Defendants as the designers and manufacturers of the remote operation system, and control console related to the at-issue top drive, had a duty to discover and repair any defects in the remote operation system and control console and its component parts that were known, or discoverable in the exercise of ordinary care.

81.     Plaintiff's injuries and damages were a direct and proximate result of Omron Defendants' negligence, carelessness and recklessness in the following particulars:

      a.  In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the at-issue remote operation system and control console;

b.  In blatantly failing to use due care in manufacturing, designing, marketing and selling a defective product;

c.  In failing to inspect the at-issue remote operation system and control console for any reasonably foreseeable defects or hazardous conditions relating to any parts, systems, devices, or mechanisms relating to the top drive;

d.  In failing to fix or repair any known or reasonably foreseeable defects or hazardous conditions relating to the at-issue remote operation system and control console;

e.  In failing to ensure that the at-issue remote operation system and control console could reliably indicated if the IBOP valve was open or closed;

f.  In failing to ensure IBOP valve of the top drive functioned correctly with the at-issue remote operation system and control console;

g.  In negligently replacing or repairing the connecting device or any parts, systems, devices, or mechanisms relating to the at-issue remote operation system and control console;

h.  In failing to properly employ the instructions, manuals, or proper techniques necessary when installing, replacing, repairing, and/or servicing the at-issue remote operation system and control console;

i.  In failing to replace or repair worn out parts, systems, devices, or mechanisms relating to the at-issue remote operation system and control console;

j.  In failing provide and display adequate warnings or instructions with respect to the intended use of the at-issue remote operation system and control console;

k.  In failing to provide and display adequate warning that the IBOP valve of the top drive may not release properly in high pressure drilling operations using the at-issue remote operation system and control console;

l.  In failing to notify, warn, or make known to the purchaser and ultimate user of the at-issue remote operation system and control console that there were defective and/or worn out parts, devices, systems or mechanisms of the at-issue remote operation system and control console; and

m. In allowing to be put into the stream of commerce a remote operation system

and control console which it knew or should have known was defective, hazardous, or unnecessarily dangerous.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Omron Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

### COUNT VIII
*Plaintiff Anthony Hile vs. Omron Defendants*
**Strict Products Liability**

82.      All preceding paragraphs are incorporated herein by reference.

83.      Omron Defendants designed, manufactured, inspected, tested, sold, marketed and supplied the remote operation system, and control console related to the at-issue top drive.

84.      At all relevant times, Omron Defendants represented to Plaintiff's employer, Plaintiff, and the public in general that the at-issue remote operation system, and control console as assembled, were free from defects, and generally suitable for the purposes for which they were intended.

85.      Contrary to Omron Defendants' representations, the remote operation system, and control console related to the at-issue top drive as assembled, at the time it left Omron Defendants' control, was in a defective, hazardous, unsafe and dangerous condition, unfit for its intended use, and unreasonably dangerous to Plaintiff and other, both at the time it left control of Defendants and on the day of the incident, generally, and based on the following particulars:

   a. The at-issue the remote operation system, and control console as assembled were designed and manufactured in such a manner that it produced pressure at hazardous, unsafe and dangerous levels;

   b. Defendants failed to use a safer design when there were feasible alternatives at the time of the top drive's manufacture

c.  The at-issue the remote operation system, and control console as assembled were designed and manufactured in such a manner that it was caused fail to release the IBOP valve;

d.  The at-issue the remote operation system, and control console as assembled were designed and manufactured in such a manner that it did not have a means to indicate if the IBOP valve had failed to properly open;

e.  The at-issue the remote operation system, and control console as assembled was designed and manufactured in such a manner that it did not have a means to indicate if the IBOP valve had failed to properly open;

f.  Defendants failed to use a safer design when there were feasible alternatives at the time of the top drive's manufacture;

g.  The at-issue the remote operation system, and control console as assembled was designed and manufactured in such a manner that it did not have a means to accurately indicate the position of the at-issue IBOP valve;

h.  The at-issue the remote operation system, and control console as assembled, failed to contain adequate warnings or instructions with respect to IBOP;

i.  The at-issue the remote operation system, and control console as assembled did not contain a pressure reading related to the at the IBOP valve at-issue;

j.  In the at-issue the remote operation system, and control console being designed and manufactured in such a manner that the IBOP valve did not open properly when control by the top drive console;

k.  In the at-issue the remote operation system, and control console being designed and manufactured in such a manner that the top drive console indicated that the IBOP was open when it was not;

l.  The at-issue the remote operation system, and control console as assembled was designed and manufactured in such a manner that it could not operate safely for its foreseeable intended use; and

m. The remote-control system and control console were designed and manufactured in such a manner that it could not operate properly to open the at-issue IBOP valve.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Omron Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

### COUNT IX
*Plaintiff vs. Omron Defendants*
**Breach of Warranty**

86.   All preceding paragraphs are incorporated herein by reference.

87.   At the time the remote operation system, and control console related to the at-issue top drive was sold, Omron Defendants were in the business of selling and marketing similar industrial electrical and remoter operation systems and was a merchant of such.

88.   In connection with the sale of the remote operation system, and control console related to the at-issue top drive, Omron Defendants provided the purchaser and subsequent purchasers and users an implied warranty of merchantability and maintained that the connecting device was fit for the ordinary purposes for which it was used.

89.   Additionally, Plaintiff relied on the representations made by Omron Defendants that the remote operation system, and control console related to the at-issue top drive would be fit and suitable for this particular purpose.

90.   The remote operation system, and control console related to the at-issue top drive supplied by Omron Defendants was dangerous and defective at the time it left Omron Defendants' control, and was unfit for the ordinary purposes for which it was to be used.

91.   Due to the nature of the defect as alleged herein, Plaintiff was unable to discover the nature of this defect until the time of the herein incident.

92.   The injuries suffered by Plaintiff and the resultant damages were caused by a

breach of the implied warranties of merchantability and fitness for a particular purpose extended to the purchasers and users by Omron Defendants.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Omron Defendants in an amount in excess of $75,000, together with court costs, interest and all other and further relief permitted by the Court.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

Dated: October \_\_\_, 2023

Chad P. Shannon, Esquire
PA I.D. No.: 91212
*cshannon@fridaylaw.com*

Ian M. Watt, Esquire
PA I.D. No.: 324364
*iwatt@fridaylaw.com*

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, PA  15216
Tele # Phone: (412) 561-4290
Fax # Fax: (412) 561-4291